IN THE COURT OF APPEALS OF TENNESSEE
AT KNOXVILLE
Assigned on Briefs February 6, 2026

IN RE MICHAEL S.

Appeal from the Chancery Court for Hamblen County
No. 2024-CV-339        Douglas T. Jenkins, Chancellor

_____

No. E2025-01028-COA-R3-PT

_____

In this case involving termination of a mother's parental rights to her child, the trial court determined that clear and convincing evidence supported two grounds for termination: abandonment by failure to visit and abandonment by failure to financially support the child. The trial court also found that termination was in the child's best interest. The mother has appealed. After thorough review, we affirm the trial court's determination relative to the ground of abandonment by failure to support. However, the evidence did not support a finding of abandonment by failure to visit, and we reverse the trial court's determination as to that ground. We vacate, for insufficient findings of fact and conclusions of law, the trial court's conclusion that termination was in the child's best interest and remand this case to the trial court with instructions to conduct a thorough analysis of the best interest factors found in Tennessee Code Annotated § 36-1-113(i).

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court
Affirmed in Part, Reversed in Part, Vacated in Part; Case Remanded**

THOMAS R. FRIERSON, II, J., delivered the opinion of the court, in which JOHN W. MCCLARTY, P.J., E.S., and ANDY D. BENNETT, J., joined.

Ryan T. Logue, Jonesborough, Tennessee, for the appellant, Brittany B.

Ethel P. Rhodes, Morristown, Tennessee, for the appellee, Jaime M.[1]

**OPINION**

---

[1] The appellee's name has been spelled in various ways throughout the proceedings before the trial court and on appeal, including "Jaime," "Jamie," and "Jamey." We have chosen to use the spelling that appeared on the original termination petition and the amended termination petition.

## I. Factual and Procedural Background

On August 5, 2024, Jaime M. ("Petitioner"), filed a Petition for Termination of Parental Rights and Petition to Adopt ("Termination Petition") in the Hamblen County Chancery Court ("trial court"), seeking termination of the parental rights of Brittany B. ("Mother") and Tony S. ("Father") to their minor child, Michael S. ("the Child.").[2] The Child was born in June 2021. Petitioner alleged the following grounds for termination against Mother: (1) abandonment by failure to visit, (2) failure to manifest an ability and willingness to assume legal and physical custody of or financial responsibility for the Child, and (3) persistence of the conditions that led to the Child's removal. Petitioner further alleged that termination of Mother's parental rights was in the Child's best interest. Petitioner averred that Mother was "homeless," that she had "voluntarily" given custody of the Child to Petitioner, and that she had "indicated she [would] consent to [] adoption." Neither parent filed an answer to the Termination Petition. Petitioner accordingly filed a motion for default judgment as to the Termination Petition in September 2024. On September 19, 2024, the trial court appointed counsel for Mother and a guardian *ad litem* ("GAL") for the Child.

Petitioner filed an amended petition on January 18, 2025 ("Amended Termination Petition"), in which she alleged the additional ground of abandonment by failure to support and added certain alleged facts to support the grounds of abandonment by failure to visit and persistence of conditions. Relative to the ground of abandonment by failure to visit, Petitioner averred that Mother had "made one token visit" with the Child on June 29, 2024. Concerning the ground of persistence of conditions, Petitioner claimed that the Child had been removed from Mother's custody "for a period of six months by a court order[.]"

The Amended Termination Petition included the following additional details regarding the Child's circumstances: (1) on June 14, 2024, the Jefferson County Department of Human Services ("DHS") had removed the Child from the parents' custody by "emergency petition" and granted Petitioner temporary custody of the Child;[3] (2) when the Child was removed into protective custody, "he was living in a car with [Mother]"; (3) when Petitioner gained custody of the Child she had "bathed" him "five

---

[2] Father did not appear or defend his interests in the proceedings below and has not filed an appeal. Therefore, this appeal addresses only the termination of Mother's parental rights.

[3] Petitioner appears to have inadvertently erred in stating certain of the dates in the timeline of events. For example, in the Amended Termination Petition, Petitioner stated that the Child was removed into protective custody "in June 2023." However, in another portion of the Amended Termination Petition, Petitioner averred that the juvenile court had granted her "temporary custody on June 14, 2025." In the original Termination Petition, Petitioner stated that the Child had resided with her "since June 14, 2024." Upon careful review of the entire record, we discern that Petitioner received custody of the Child on June 14, 2024.

times before he was freed from months of accrued filth and grime"; (4) the Child was "incredibly hungry and tried to overeat for days after the removal"; and (5) on July 31, 2024, the Jefferson County Juvenile Court ("juvenile court") had adjudicated the Child dependent and neglected by default and granted legal and physical custody of the Child to Petitioner.

On March 26, 2025, the trial court conducted a trial on the termination petitions. Present for the trial were Petitioner and her counsel, the GAL, and Mother's attorney. Mother did not appear, and her attorney sought a continuance, explaining that Mother was not present because she had a doctor's appointment. The trial court denied the continuance, and Petitioner's attorney moved for a default judgment. The trial court called Petitioner to be sworn and questioned her regarding Mother's and Father's lack of child support payments, lack of visitation, and failure to contact Petitioner regarding the Child's well-being. Petitioner testified about Mother's last visit with the Child that had occurred on June 29, 2024. Petitioner explained that she and the Child had met Mother at the "mall in front of Bath and Body" and that the Child had "looked at [Mother] and said, 'You are not my mommy. [Petitioner] is my mommy. [Petitioner's partner] is my daddy.'" The trial court questioned Petitioner about her involvement in the Child's life, and Petitioner answered that she had cared for the Child "since he was two" and had provided for "all of his daily needs" including "education."

Petitioner further testified that when she first received the Child, she had to bathe him "five times" and that the Child had been "living in a car" with Mother. Petitioner articulated that when she arrived to pick up the Child, there were "three police officers" present. According to Petitioner, the officers had instructed Petitioner to "strip [the Child] down" and informed her the Child had come "with nothing." Petitioner further testified that she had submitted to a home study as required for potential adoptive parents who are not biologically related to the child for whom adoption is sought. The trial court asked Petitioner to secure proof of the home study.

The trial court stated from the bench that the Child was "abandoned" and that Petitioner's home was the "proper placement" for the Child. The trial court noted that Petitioner's testimony was unrebutted by either parent. Mother's attorney acknowledged that Petitioner had never denied Mother visitation with the Child. The trial court then questioned the GAL to determine whether the GAL thought placement of the Child with Petitioner was appropriate, to which the GAL responded: "This is appropriate. The [C]hild has got stability and hopefully a future permanency with this family. I am in agreement with it." At that point, the trial court concluded the hearing.

On July 2, 2025, the trial court entered a "Final Order of Adoption By Default." In the order, the trial court terminated Mother's and Father's parental rights after determining that clear and convincing evidence demonstrated that they had abandoned the Child for "failure to support and failure to visit the [C]hild for more than one year."

The court then granted the petition for adoption after noting that Petitioner was a "fit person" to receive custody of the Child, that Petitioner had been "investigated by the Jefferson County Department of Children's Services prior to receiving custody of the Child," and that Petitioner had provided a home study to the court "completed by Adoption Promises." The trial court further concluded that the adoption was in the best interest of the Child.

Mother timely appealed, contending that in terminating her parental rights, the trial court had failed to make specific findings of fact and conclusions of law as required by Tennessee Code Annotated § 36-1-113(k). In addition, Mother posited that the trial court had determined that adoption was in the Child's "best interest" without "further elaborating as to which statutory factors" applied in reaching that conclusion.

Upon reviewing the record, this Court determined that the trial court's "Final Order of Adoption by Default" lacked sufficient findings of fact and conclusions of law to satisfy the requirements of Tennessee Code Annotated § 36-1-113(k) and Tennessee Rule of Procedure 52.01. Accordingly, on February 12, 2026, this Court remanded the matter to the trial court for an opportunity to enter a new order that complies with Tennessee Code Annotated § 36-1-113(k).

In turn, the trial court entered an order on March 13, 2026, and the order was filed as a supplemental record in this Court on April 1, 2026. The trial court determined that based upon the "unrebutted proof" presented by Petitioner at the termination hearing, clear and convincing evidence supported termination of Mother's and Father's parental rights pursuant to the grounds of abandonment by failure to visit and abandonment by failure to support the Child. The court then found, by clear and convincing evidence, that termination of Mother's and Father's parental rights was in the Child's best interest.

Mother filed an amended brief in response to the trial court's March 13, 2026 order, raising the same issues as she had in her initial brief on appeal.

## II. Issues Presented

Mother presents the following issues for our review, which we have restated slightly:

1.      Whether the trial court made specific findings of fact and conclusions of law, as required by Tennessee Code Annotated § 36-1-113(k), in the "Final Order of Adoption by Default."

2.      Whether the trial court erred in finding by clear and convincing evidence that termination of Mother's parental rights was in the Child's best interest.

- 4 -

III.  Standard of Review

In a termination of parental rights case, this Court has a duty to determine "whether the trial court's findings, made under a clear and convincing standard, are supported by a preponderance of the evidence." *In re F.R.R., III*, 193 S.W.3d 528, 530 (Tenn. 2006).  The trial court's findings of fact are reviewed *de novo* upon the record, accompanied by a presumption of correctness unless the evidence preponderates against those findings.  *See* Tenn. R. App. P. 13(d); *see also In re Carrington H.*, 483 S.W.3d 507, 523-24 (Tenn. 2016); *In re F.R.R., III*, 193 S.W.3d at 530.  Questions of law, however, are reviewed *de novo* with no presumption of correctness.  *See In re Carrington H.*, 483 S.W.3d at 524 (citing *In re M.L.P.*, 281 S.W.3d 387, 393 (Tenn. 2009)).  The trial court's determinations regarding witness credibility are entitled to great weight on appeal and shall not be disturbed absent clear and convincing evidence to the contrary.  *See Jones v. Garrett*, 92 S.W.3d 835, 838 (Tenn. 2002).

"Parents have a fundamental constitutional interest in the care and custody of their children under both the United States and Tennessee constitutions." *Keisling v. Keisling*, 92 S.W.3d 374, 378 (Tenn. 2002).  It is well established, however, that "this right is not absolute and parental rights may be terminated if there is clear and convincing evidence justifying such termination under the applicable statute." *In re Drinnon*, 776 S.W.2d 96, 97 (Tenn. Ct. App. 1988) (citing *Santosky v. Kramer*, 455 U.S. 745 (1982)).  As our Supreme Court has explained:

> The parental rights at stake are "far more precious than any property right." *Santosky* [*v. Kramer*], 455 U.S. [745,] 758-59 [(1982)].  Termination of parental rights has the legal effect of reducing the parent to the role of a complete stranger and of ["]severing forever all legal rights and obligations of the parent or guardian of the child." Tenn. Code Ann. § 36-1-113(l)(1); *see also Santosky*, 455 U.S. at 759 (recognizing that a decision terminating parental rights is "*final* and irrevocable").  In light of the interests and consequences at stake, parents are constitutionally entitled to "fundamentally fair procedures" in termination proceedings. *Santosky*, 455 U.S. at 754; *see also Lassiter v. Dep't of Soc. Servs. of Durham Cnty, N.C.*, 452 U.S. 18, 27 (1981) (discussing the due process right of parents to fundamentally fair procedures).
>
> Among the constitutionally mandated "fundamentally fair procedures" is a heightened standard of proof—clear and convincing evidence. *Santosky*, 455 U.S. at 769.  This standard minimizes the risk of unnecessary or erroneous governmental interference with fundamental parental rights. *Id.*; *In re Bernard T.*, 319 S.W.3d 586, 596 (Tenn. 2010).  "Clear and convincing evidence enables the fact-finder to form a firm belief

or conviction regarding the truth of the facts, and eliminates any serious or substantial doubt about the correctness of these factual findings." *In re Bernard T.*, 319 S.W.3d at 596 (citations omitted). The clear-and-convincing-evidence standard ensures that the facts are established as highly probable, rather than as simply more probable than not. *In re Audrey S.*, 182 S.W.3d 838, 861 (Tenn. Ct. App. 2005); *In re M.A.R.*, 183 S.W.3d 652, 660 (Tenn. Ct. App. 2005).

* * *

In light of the heightened burden of proof in termination proceedings, however, the reviewing court must make its own determination as to whether the facts, either as found by the trial court or as supported by a preponderance of the evidence, amount to clear and convincing evidence of the elements necessary to terminate parental rights. *In re Bernard T.*, 319 S.W.3d at 596-97.

*In re Carrington H.*, 483 S.W.3d at 522-24. "[P]ersons seeking to terminate [parental] rights must prove all the elements of their case by clear and convincing evidence," including statutory grounds and the best interest of the child. *See In re Bernard T.*, 319 S.W.3d 586, 596 (Tenn. 2010).

## IV. Statutory Grounds for Termination of Parental Rights

Tennessee Code Annotated § 36-1-113 (West July 1, 2021, to current)[4] lists the statutory requirements for termination of parental rights, providing in relevant part:

(a)     The chancery and circuit courts shall have concurrent jurisdiction with the juvenile court to terminate parental or guardianship rights to a child in a separate proceeding, or as a part of the adoption proceeding by utilizing any grounds for termination of parental or guardianship rights permitted in this part or in title 37, chapter 1, part 1 and title 37, chapter 2, part 4.

* * *

(c)     Termination of parental or guardianship rights must be based upon:

---

[4] Unless otherwise noted, all citations to any section within Tennessee Code Annotated §§ 36-1-113 and 36-1-102 shall be made in reference to the version that was effective on the date the Termination Petition was filed and not to any other version of the statute. *See, e.g.*, *In re Zakary O.*, No. E2022-01062-COA-R3-PT, 2023 WL 5215385, at *4 n.6 (Tenn. Ct. App. Aug. 5, 2023). In some instances, such as this one, the subsection that was in effect at the time the Termination Petition was filed has not changed and therefore remains current.

(1) A finding by the court by clear and convincing evidence that the grounds for termination of parental or guardianship rights have been established; and

(2) That termination of the parent's or guardian's rights is in the best interests of the child.

The trial court concluded that the evidence clearly and convincingly supported two statutory grounds to terminate Mother's parental rights: abandonment by failure to visit the Child and abandonment by failure to financially support the Child. We will address each statutory ground in turn.

A. Statutory Abandonment

Tennessee Code Annotated § 36-1-113(g)(1) (West July 1, 2022, to current), provides:

(g) Initiation of termination of parental or guardianship rights may be based upon any of the grounds listed in this subsection (g). The following grounds are cumulative and nonexclusive, so that listing conditions, acts or omissions in one ground does not prevent them from coming within another ground:

(1) Abandonment by the parent or guardian, as defined in § 36-1-102, has occurred[.]

The version of Tennessee Code Annotated § 36-1-102(1) (West July 1, 2024, to May 4, 2025) in effect when the Termination Petition was filed provided the following definition of abandonment as pertinent here:

For purposes of terminating the . . . rights of a parent . . . of a child to that child in order to make that child available for adoption, "abandonment" means that:

* * *

(A)(i) (b) If the child is less than four (4) years of age at the time of the filing of a petition for termination of parental rights, for a period of three (3) consecutive months immediately preceding the filing of a proceeding, pleading, petition, or amended or supplemental petition to terminate the parental rights of the parent . . . who is the subject of the petition for termination of

- 7 -

parental rights or adoption, the parent [has either] failed to visit or ha[s] failed to support or . . . to make reasonable payments toward the support of the child;

\* \* \*

    (E)    For purposes of this subdivision (1), "failed to visit" means the failure, for the applicable time period, to visit or engage in more than token visitation. That the parent had only the means or ability to make very occasional visits is not a defense to failure to visit if no visits were made during the relevant time period[.]

We must begin our review of the abandonment grounds by addressing the applicable determinative period for each ground as outlined by statute. Because the Child was less than four years old when the Termination Petition was filed, the timeframe for calculating the ground of abandonment would normally be the three consecutive months prior to the filing of the Termination Petition. *See* § 36-1-102(1)(A)(i)(b). However, when, as here, a petitioner has filed an amended termination petition that includes "an entirely new ground," the determinative period may be calculated relative to the filing date of the amended petition. *See, e.g.*, *In re Chase L.*, No. M2017-02362-COA-R3-PT, 2018 WL 3203109, at \*9-10 (Tenn. Ct. App. June 29, 2018). This is especially true when the "condition precedent" to the newly alleged ground "did not exist at the time of the filing of the initial petition." *See id*. at \*10.

1. Abandonment by Failure to Support

In the original Termination Petition, Petitioner asserted the ground of abandonment by failure to support against Father but did not raise it against Mother. Petitioner alleged that "Father was not supporting the Child while the Child was residing with [Mother] and has offered no support since the DCS approved custodial order." It was not until Petitioner filed the Amended Termination Petition on January 18, 2025 that she raised the ground against Mother. In the Amended Termination Petition, Petitioner alleged that the Child had "resided with [Petitioner] since June 14, 2024 when [Petitioner] and her partner were given the Child by Jefferson County law enforcement officers" and that Mother had abandoned the Child because Mother had "offered no support to [Petitioner]."

The facts giving rise to the ground of abandonment by failure to support in this action did not exist on August 5, 2024, the date that the original Termination Petition was filed, because at that time Mother had only been away from the Child for just under two months. Hence, the ground of abandonment by failure to support as alleged against Mother in the Amended Termination Petition was a "separate and distinct" allegation and

did "not relate back to the filing of the original petition." *See In re Chase L.*, 2018 WL 3203109, at \*9-10. Accordingly, the proper determinative period for calculating the ground of abandonment by failure to support was the three months prior to the filing of the Amended Termination Petition, or October 18, 2024 to January 17, 2025 ("Determinative Period"). *See* Tenn. Code Ann. § 36-1-102(1)(A)(i)(b); *In re Chase L.*, 2018 WL 3203109, at \*10.

In its amended final order, the trial court erred by analyzing this ground using a determinative period from March 5, 2024, to August 5, 2024 (the five months preceding the filing of the original Termination Petition). However, because the trial court elicited testimony from Petitioner that Mother had not paid "any child support" during the period that Petitioner had custody of the Child (spanning from June 14, 2024 until March 24, 2025), we determine such error to be harmless because the trial court's findings, relative to the proof presented at the trial, included the correctly calculated Determinative Period. Therefore, the evidence preponderates in favor of the trial court's determination by clear and convincing evidence that Mother had abandoned the Child by failing to financially support the Child during the Determinative Period.

### 2. Abandonment by Failure to Visit

Petitioner alleged the ground of abandonment by failure to visit against Mother in the original Termination Petition, averring that Mother had not attempted to visit the Child since June 29, 2024, and claiming that this amounted to "a willful and intentional failure to visit and essentially abandonment of the Child." Because Petitioner raised this ground against Mother in the original Termination Petition, the correct determinative period was the three months prior to the filing of the Termination Petition, or May 5, 2024, to August 4, 2024. *See* Tenn. Code Ann. § 36-1-102(1)(A)(i)(b); *In re Chase L.*, 2018 WL 3203109, at \*9.

As with the ground of abandonment by failure to support, the trial court calculated the determinative period for this ground to be the five-month period spanning from March 5, 2024, to August 5, 2024. This was error for two reasons. First, the Child was under four years old when the Termination Petition was filed, and therefore the determinative period for this ground encompassed only three months. *See* Tenn. Code Ann. § 36-1-102(1)(A)(i)(b). Second, the determinative period should have been calculated using the three months "immediately preceding the filing of a proceeding," and should not have included the date that a termination petition was filed. *See In re Joseph F.*, 492 S.W.3d 690, 702 (Tenn. Ct. App. 2016) (explaining that the applicable statutory period for calculating the ground of abandonment "began [on] the day prior to the filing of the termination petition") (citing *In re Jacob C.H.*, No. E2013-00587-COA-R3-PT, 2014 WL 689085, at \*6 (Tenn. Ct. App. Feb. 20, 2014)).

Hence, the correct determinative period for considering the statutory ground of

abandonment by failure to visit was May 5, 2024, until August 4, 2024. Employing these dates, we determine that clear and convincing evidence does not support termination of Mother's parental rights pursuant to the ground of abandonment by failure to visit because the Child was living with Mother for a significant portion of the determinative period—from May 5, 2024, until the Child was removed from her custody on June 14, 2024. We therefore determine that Petitioner did not meet her burden to establish this ground by clear and convincing evidence. Accordingly, we reverse the trial court's determination and conclude that the ground of abandonment by failure to visit does not support termination of Mother's parental rights.

## V. Best Interest of the Child

When, as here, a parent has been deemed unfit by establishment of at least one statutory ground for termination of parental rights, the interests of parent and child diverge, and the focus shifts to what is in the child's best interest. *In re Audrey S.*, 182 S.W.3d 838, 877 (Tenn. Ct. App. 2005); *see also In re Carrington H.*, 483 S.W.3d at 523 ("The best interests analysis is separate from and subsequent to the determination that there is clear and convincing evidence of grounds for termination." (quoting *In re Angela E.*, 303 S.W.3d 240, (Tenn. 2010))). Tennessee Code Annotated § 36-1-113(i) provides a list of factors the trial court is to consider when determining if termination of parental rights is in a child's best interest. This list is not exhaustive, and the statute does not require the court to find the existence of every factor before concluding that termination is in a child's best interest. *See In re Carrington H.*, 483 S.W.3d at 523; *In re Audrey S.*, 182 S.W.3d at 878 ("The relevancy and weight to be given each factor depends on the unique facts of each case."). Furthermore, the best interest of a child must be determined from the child's perspective and not the parent's. *White v. Moody*, 171 S.W.3d 187, 194 (Tenn. Ct. App. 2004).

Tennessee Code Annotated § 36-1-113(i)(1) (West July 1, 2021, to current) lists the following factors for consideration:

(A) The effect a termination of parental rights will have on the child's critical need for stability and continuity of placement throughout the child's minority;

(B) The effect a change of caretakers and physical environment is likely to have on the child's emotional, psychological, and medical condition;

(C) Whether the parent has demonstrated continuity and stability in meeting the child's basic material, educational, housing, and safety needs;

- 10 -

(D)     Whether the parent and child have a secure and healthy parental attachment, and if not, whether there is a reasonable expectation that the parent can create such attachment;

(E)     Whether the parent has maintained regular visitation or other contact with the child and used the visitation or other contact to cultivate a positive relationship with the child;

(F)     Whether the child is fearful of living in the parent's home;

(G)     Whether the parent, parent's home, or others in the parent's household trigger or exacerbate the child's experience of trauma or post-traumatic symptoms;

(H)     Whether the child has created a healthy parental attachment with another person or persons in the absence of the parent;

(I)      Whether the child has emotionally significant relationships with persons other than parents and caregivers, including biological or foster siblings, and the likely impact of various available outcomes on these relationships and the child's access to information about the child's heritage;

(J)     Whether the parent has demonstrated such a lasting adjustment of circumstances, conduct, or conditions to make it safe and beneficial for the child to be in the home of the parent, including consideration of whether there is criminal activity in the home or by the parent, or the use of alcohol, controlled substances, or controlled substance analogues which may render the parent unable to consistently care for the child in a safe and stable manner;

(K)     Whether the parent has taken advantage of available programs, services, or community resources to assist in making a lasting adjustment of circumstances, conduct, or conditions;

(L)     Whether the department has made reasonable efforts to assist the parent in making a lasting adjustment in cases where the child is in the custody of the department;

(M)     Whether the parent has demonstrated a sense of urgency in establishing paternity of the child, seeking custody of the child, or addressing the circumstance, conduct, or conditions that made an award of custody unsafe and not in the child's best interest;

(N)     Whether the parent, or other person residing with or frequenting the home of the parent, has shown brutality or physical, sexual, emotional, or psychological abuse or neglect toward the child or any other child or adult;

(O)     Whether the parent has ever provided safe and stable care for the child or any other child;

(P)     Whether the parent has demonstrated an understanding of the basic and specific needs required for the child to thrive;

(Q)     Whether the parent has demonstrated the ability and commitment to creating and maintaining a home that meets the child's basic and specific needs and in which the child can thrive;

(R)     Whether the physical environment of the parent's home is healthy and safe for the child;

(S)     Whether the parent has consistently provided more than token financial support for the child; and

(T)     Whether the mental or emotional fitness of the parent would be detrimental to the child or prevent the parent from consistently and effectively providing safe and stable care and supervision of the child.

The statute further provides: "When considering the factors set forth in subdivision (i)(1), the prompt and permanent placement of the child in a safe environment is presumed to be in the child's best interest." Tenn. Code Ann. § 36-1-113(g)(i)(2).

As our Supreme Court has instructed regarding the best interest analysis:

These statutory factors are illustrative, not exclusive, and any party to the termination proceeding is free to offer proof of any other factor relevant to the best interests analysis. In re Carrington H., 483 S.W.3d at 523 (citing In re Audrey S., 182 S.W.3d 838, 878 (Tenn. Ct. App. 2005)). Facts considered in the best interests analysis must be proven by "a preponderance of the evidence, not by clear and convincing evidence." In re Kaliyah S., 455 S.W.3d [533,] 555 [(Tenn. 2015)] (citing In re Audrey S., 182 S.W.3d at 861). "After making the underlying factual findings, the trial court should then consider the combined weight of those facts to determine whether they amount to clear and convincing evidence that termination is in

- 12 -

the child's best interest[s]." Id. When considering these statutory factors, courts must remember that "[t]he child's best interests [are] viewed from the child's, rather than the parent's, perspective." In re Audrey S., 182 S.W.3d at 878. Indeed, "[a] focus on the perspective of the child is the common theme" evident in all of the statutory factors. Id. "[W]hen the best interests of the child and those of the adults are in conflict, such conflict shall always be resolved to favor the rights and the best interests of the child. . . ." Tenn. Code Ann. § 36-1-101(d) (2017).

> Ascertaining a child's best interests involves more than a "rote examination" of the statutory factors. In re Audrey S., 182 S.W.3d at 878. And the best interests analysis consists of more than tallying the number of statutory factors weighing in favor of or against termination. White v. Moody, 171 S.W.3d 187, 193-94 (Tenn. Ct. App. 2004). Rather, the facts and circumstances of each unique case dictate how weighty and relevant each statutory factor is in the context of the case. See In re Audrey S., 182 S.W.3d at 878. Simply put, the best interests analysis is and must remain a factually intensive undertaking, so as to ensure that every parent receives individualized consideration before fundamental parental rights are terminated. In re Carrington H., 483 S.W.3d at 523. "[D]epending upon the circumstances of a particular child and a particular parent, the consideration of one factor may very well dictate the outcome of the analysis." In re Audrey S., 182 S.W.3d at 878 (citing White v. Moody, 171 S.W.3d at 194). But this does not mean that a court is relieved of the obligation of considering all the factors and all the proof. Even if the circumstances of a particular case ultimately result in the court ascribing more weight—even outcome determinative weight—to a particular statutory factor, the court must consider all of the statutory factors, as well as any other relevant proof any party offers.

*In re Gabriella D.*, 531 S.W.3d 662, 681-82 (Tenn. 2017).

In the instant case, the trial court determined the following:

> With regard to the best interest factors, the Court finds that neither parent has exhibited any urgency in reclaiming custody of their child. The Petitioner has provided a stable home and all the basic needs for the subject minor child. Based on the apparent disinterest of the parents in reclaiming custody of the child and the stability provided by the Petitioner, the Court finds that it is in the best interest of the minor child on a clear and convincing standard that the parents' rights be terminated and the child made available for adoption by the Petitioner. Further, the Court heard no proof of any best interest factor that would weigh against termination.

As Mother correctly posits in her appellate brief, Tennessee Code Annotated § 36-1-113(k) requires that a trial court make "specific findings of fact and conclusions of law" respecting the best interest factors enumerated above. *See also* Tenn. Code Ann. § 36-1-113(i)(3); *In re Gabriella D.*, 531 S.W.3d at 681-82; *In re Maria B.S.*, No. E2011-01784-COA-R3-PT, 2012 WL 1431244, at *2 (Tenn. Ct. App. Apr. 26, 2012) (explaining that Tennessee Code Annotated § 36-1-113(k) "explicitly requires courts terminating parental rights to enter an order which makes specific findings of fact and conclusions of law[.]" (quoting *In re Audrey S.*, 182 S.W.3d at 861)). Regarding this requirement, this Court has explained:

> The parental termination statute requires "an order that makes specific findings of fact and conclusions of law." Tenn. Code Ann. § 36-1-113(k). As our supreme court has observed, this Court "has routinely remanded contested termination cases to the trial court for failure to make findings of fact and/or conclusions of law, whether related to the grounds for termination or the child's best interests." *In re Angela E.*, 303 S.W.3d 240, 251 (Tenn. 2010); *see, e.g.*, *In re Autumn D.*, No. E2020-00560-COA-R3-PT, 2020 WL 6306056, at *5 (Tenn. Ct. App. Oct. 28, 2020) (vacating the order on the failure to manifest ground for not including a specific finding regarding a risk of substantial harm and remanding for the trial court to make the necessary findings of fact and conclusions of law); *In re Mickeal Z.*, No. E2018-01069-COA-R3-PT, 2019 WL 337038, at *13 (Tenn. Ct. App. Jan. 25, 2019) (concluding that the court was "compelled" to vacate the order terminating parental rights and remand for an appropriate order when the trial court failed to make specific findings regarding each of the elements of a statutory ground for termination); *In re Haley S.*, No. M2017-00214-COA-R3-PT, 2018 WL 1560078, at *10 (Tenn. Ct. App. Mar. 29, 2018) (vacating the termination of parental rights and remanding for sufficient findings of fact and conclusions of law regarding the grounds for termination and the best interest of the child).

*In re Dakari M.*, No. M2022-00365-COA-R3-PT, 2024 WL 1269860, at *5 (Tenn. Ct. App. Mar. 26, 2024).

Respectfully, we conclude that the final order of termination lacks specific findings of fact and conclusions of law relative to the best interest factors as required by Tennessee Code Annotated § 36-1-113(i)(3) and (k). The trial court did not delineate or mention any of the best interest factors in its analysis. The court simply noted that it had "heard no proof of any best interest factor that would weigh against termination" and accordingly concluded that it was "in the best interest of the minor child on a clear and convincing standard that the parents' rights be terminated and the child made available for adoption by the Petitioner."

Upon careful review, we are unable to discern whether the trial court considered each of the statutory factors and how the trial court considered the proof presented relative to the factors. *See In re Gabriella D.*, 531 S.W.3d at 681-82. In the context of a parental termination case, "[w]hen a trial court has not complied with Tenn. Code Ann. § 36-1-113(k), we cannot simply review the record *de novo* and determine for ourselves where the preponderance of the evidence lies as we would in other civil, non-jury cases." *In re K.N.R.*, No. M2003-1301-COA-R3-PT, 2003 WL 22999427, at *3 (Tenn. Ct. App. Dec. 23, 2003). This is because "[a] trial court's failure to comply with Tenn. Code Ann. § 36-1-113(k) affects more than the standard of appellate review. It affects the viability of the appeal." *In re Maria B.S.*, 2012 WL 1431244, at *3 (quoting *In re C.R.B.*, No. M2003-00345-COA-R3-JV, 2003 WL 2268091, at *4 (Tenn. Ct. App. Nov. 13, 2003)). In such instances, "the Tennessee Supreme Court has instructed the appellate courts to remand the case to the trial court for the preparation of appropriate written findings of fact and conclusions of law." *Id.*; *see also In re Cartier H.*, No. M2022-01576-COA-R3-PT, 2023 WL 7158076, at *14 (Tenn. Ct. App. Oct. 31, 2023).

In the instant action, by reason of the absence of specific findings of fact attendant to the statutory factors in support of the best interest determination, that portion of the final order must be vacated with instructions that upon remand, specific findings of fact and conclusions of law be included relative to the statutory best interest factors. We recognize that vacating the trial court's ruling will prolong the proceedings and delay finality for the Child in this case. *See, e.g.*, *In re Liberty T.*, No. E2022-00307-COA-R3-PT, 2023 WL 2681897, at *11 (Tenn. Ct. App. Mar. 29, 2023) ("[W]e recognize that 'time has marched on during this litigation.'" (quoting *In re Disnie P.*, No. E2022-00662-COA-R3-PT, 2023 WL 2396557, at *14 (Tenn. Ct. App. Mar. 8, 2023))). However, we note that the Child currently resides in a stable environment with Petitioner, with whom he has now lived for the past two years such that the delay should prove to yield a minimal impact. Furthermore, although the Child's well-being is certainly paramount, we find that remand in this matter is imperative.

The best interest analysis is a "factually intensive undertaking," meant to ensure that Mother receives "individualized consideration before fundamental parental rights are terminated." *See In re Gabriella D.*, 531 S.W.3d at 682 (citing *In re Carrington H.*, 483 S.W.3d at 523). In consideration of this, the trial court may, in its discretion, conduct an evidentiary hearing for the purpose of gathering any proof necessary to conduct a full and thorough analysis of the best interest factors set forth in § 36-1-113(i)(1)(A)-(T).

## VI. Conclusion

For the foregoing reasons, we affirm the judgment of the trial court concerning the statutory ground of abandonment by failure to support. We reverse the trial court's determination that Mother had abandoned the Child by failure to visit. We vacate, for

insufficient findings of fact and conclusions of law, the trial court's conclusion that termination of Mother's parental rights was in the Child's best interest. This case is remanded to the trial court with instructions to consider the proof and the statutory factors and make a proper determination regarding the Child's best interest, including making specific findings of fact and conclusions of law relative to the best interest factors listed in Tennessee Code Annotated § 36-1-113(k)(1)(A)-(T). The trial court shall also assess costs below. Costs on appeal are assessed one-half to the appellant, Brittany B., and one-half to the appellee, Jaime M.

s/Thomas R. Frierson, II

_____
THOMAS R. FRIERSON, II, JUDGE